# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Robert Mullen and Steven Howard, | |
| *On behalf of themselveshimself and those similarly situated,* | Case No. 1:20-cv-893 |
| Plaintiffs, | Judge Matthew W. McFarland |
| v. | Magistrate Judge |
| Chaac Pizza Midwest, LLC; Luis Ibarguengoytia; CFL Pizza, LLC; Andy Rosen; Doe Corporation 1-10; John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1.    Robert Mullen and Steven Howard, on behalf of himthemselvesself and similarly-situated individuals, brings this action against Defendants Chaac Pizza Midwest, LLC; Luis Ibarguengoytia; CFL Pizza, LLC; Andy Rosen; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiffs seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Wage Fairness Act ("OMFWSA"), O.R.C. 4111.01, *et seq.*, O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60, Kentucky wage and hour law, and for unjust enrichment.

2.      Defendants operate 32 Pizza Hut stores locations in Ohio, Kentucky, and Indiana ("Defendants' Pizza Hut stores").

3.      Plaintiffs seeks to represent the delivery drivers who have worked at the Defendants' Pizza Hut stores.

4.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, Section 34a, Kentucky wage and hour law, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.      All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiffs, have been subject to the same or similar employment policies and practices.

### Jurisdiction and Venue

6.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs''s FLSA claims.

7.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs''s Ohio and Kentucky law claims.

8.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

### Parties

**Plaintiffs**

**Robert Mullen**

9.      Plaintiff Plaintiff Robert Mullen is a resident of Indiana.

2

10.    ~~Plaintiff~~ Plaintiff Mullen is/was an "employee" ~~of all~~ of the Defendants as defined in the FLSA, Section 34a, and the Ohio Prompt Pay Act.

11.    ~~Plaintiff~~ Plaintiff Mullen has given written consent to join this action.

**Steven Howard**

12.    Plaintiff Steven Howard is a resident of Ohio.

13.    Plaintiff Howard is/was an "employee" of all of the Defendants as defined in the FLSA and Kentucky wage law.

14.    Plaintiff Howard has given written consent to join this action.


**Defendants**

~~Chaac Pizza Midwest, LLC~~

~~11.    Defendant Chaac Pizza Midwest, LLC is a foreign limited liability company authorized to do business under the laws of Ohio and Kentucky.~~

~~12.    Chaac Pizza Midwest, LLC is the entity that operates the Defendants' Pizza Hut stores.~~

~~13.    Upon information and belief, Chaac Pizza Midwest, LLC owns thirty-two Pizza Hut stores in Ohio, Kentucky, and Indiana.~~

~~14.    Chaac Pizza Midwest, LLC is the entity that appears on Plaintiffs'~~'s ~~paystubs for work they~~he ~~completes for Defendants' Pizza Hut stores.~~

~~15.    Chaac Pizza Midwest, LLC has substantial control over Plaintiff~~ Plaintiffs ~~and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.~~

3

~~16.     Chaac Pizza Midwest, LLC has direct or indirect control of the terms and conditions of Plaintiffs''s work and the work of similarly situated employees.~~

~~17.     At all relevant times, Chaac Pizza Midwest, LLC maintained control, oversight, and direction over Plaintiff Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.~~

~~18.     Chaac Pizza Midwest, LLC is an "employer" of Plaintiff Plaintiffs and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act, and Kentucky wage law.~~

~~19.     At all relevant times, Chaac Pizza Midwest, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.~~

~~20.     Chaac Pizza Midwest, LLC's gross revenue exceeds $500,000 per year.~~

**CFL Pizza, LLC**

~~21.~~15.  Defendant CFL Pizza, LLC was a limited liability company authorized to do business under the laws of Ohio and Kentucky.

~~22.~~16.  CFL Pizza, LLC was the entity that operated the Defendants' Pizza Hut stores until February 18, 2020.

~~23.~~17.  Upon information and belief, CFL Pizza, LLC owned thirty-two Pizza Hut stores in Ohio, Kentucky, and Indiana.

~~24.~~18.  CFL Pizza, LLC was the entity that appeared on Plaintiffs'~~'s~~ paystubs for work they~~he~~ completed for Defendants' Pizza Hut stores.

25.19.  CFL Pizza, LLC had substantial control over ~~Plaintiff~~ Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

26.20.  CFL Pizza, LLC had direct or indirect control of the terms and conditions of Plaintiffs'~~'s~~ work and the work of similarly situated employees.

27.21.  At all relevant times before February 18, 2020, CFL Pizza, LLC maintained control, oversight, and direction over ~~Plaintiff~~ Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

28.22.  CFL Pizza, LLC was an "employer" of ~~Plaintiff~~ Plaintiffs and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, ~~and the~~ Ohio Prompt Pay Act, and Kentucky wage law.

29.23.  At all relevant times before February 18, 2020, CFL Pizza, LLC had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

30.24.  CFL Pizza, LLC's gross revenue exceeded $500,000 per year.

~~Luis Ibarguengoytia~~

~~31.      Defendant Luis Ibarguengoytia is the owner of Chaac Pizza Midwest, LLC and the Defendants' Pizza Hut stores.~~

~~32.      Luis Ibarguengoytia is the President of Chaac Pizza Midwest, LLC~~

~~33.      Luis Ibarguengoytia is the owner of the Chaac Pizza Midwest, LLC~~

5

34. ~~Luis Ibarguengoytia operates Thirty-Two Pizza Hut stores in Ohio, Kentucky, and Indiana.~~

35. ~~Luis Ibarguengoytia is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a, and Kentucky wage law because he owns and operates the Defendants' Pizza Hut stores, serves as a president and owner of Chaac Pizza Midwest, LLC, ultimately controls significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).~~

36. ~~Luis Ibarguengoytia is the franchisee of the Defendants' Pizza Hut stores.~~

37. ~~At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had financial control over the operations at each of the Defendants' Pizza Hut stores.~~

38. ~~At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.~~

39. ~~At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had control over the Defendants' Pizza Hut stores' pay policies.~~

40. ~~At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.~~

41. At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

42. At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

43. At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to transfer the assets and liabilities of the Defendant entities.

44. At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to declare bankruptcy on behalf of the Defendant entities.

45. At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

46. At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

47. At all relevant times, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Luis Ibarguengoytia had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

48. The Defendants' Pizza Hut stores function for Luis Ibarguengoytia's profit.

~~49.    Luis Ibarguengoytia has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.~~

**Andy Rosen**

~~50.~~25.  Defendant Andy Rosen was the owner of CFL Pizza, LLC and the Defendants' Pizza Hut stores.

~~51.~~26.  Andy Rosen was the President of CFL Pizza, LLC

~~52.~~27.  Andy Rosen was the owner of the CFL Pizza, LLC

~~53.~~28.  Andy Rosen was the sole officer of CFL Pizza, LLC

~~54.~~29.  Andy Rosen operated Thirty-Two Pizza Hut stores in Ohio, Kentucky, and Indiana.

~~55.~~30.  Andy Rosen is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA, OMFWSA, ~~and~~ Section 34a, and Kentucky wage law because he owned and operated the Defendants' Pizza Hut stores, served as president and owner of CFL Pizza, LLC, ultimately controlled significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately controlled compensation and reimbursement of employees.  29 U.S.C. § 203(d).

~~56.~~31.  Andy Rosen was the franchisee of the Defendants' Pizza Hut stores until February 18, 2020.

~~57.~~32.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had financial control over the operations at each of the Defendants' Pizza Hut stores.

58.33.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

59.34.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had control over the Defendants' Pizza Hut stores' pay policies.

60.35.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

61.36.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

62.37.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

63.38.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had the power to transfer the assets and liabilities of the Defendant entities.

64.39.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had the power to declare bankruptcy on behalf of the Defendant entities.

9

65.40.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

66.41.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

67.42.  At all relevant times before February 18, 2020, by virtue of his role as owner and president of the Defendants' Pizza Hut stores, Andy Rosen had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

68.43.  The Defendants' Pizza Hut stores functioned for Andy Rosen's profit.

69.44.  Andy Rosen had influence over how the Defendants' Pizza Hut stores could run more profitably and efficiently.

**Doe Corporation 1-10**

70.45.  Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of ~~Plaintiff~~ Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA, ~~and~~ Ohio wage law, and Kentucky wage law.

71.    ~~Upon information and belief, Luis Ibarguengoytia owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Pizza Hut stores operation.~~

72.46.  Upon information and belief, the franchisor, Pizza Hut stores Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

10

73.47.  The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

74.48.  Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA, and Ohio wage law, and Kentucky wage law.

75.  Upon information and belief, Luis Ibarguengoytia has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Ohio wage law.

76.49.  Upon information and belief, Andy Rosen had entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Ohio wage law.

77.50.  The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

FACTS

**Class-wide Factual Allegations**

78.51.  During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

79.52.  Plaintiffs, and the similarly situated persons Plaintiff Plaintiffs seeks to represent, are current and former delivery drivers at the Defendants' Pizza Hut stores.

11

80.53.  All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties.

81.54.  When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Pizza Hut stores cleaning up dishes, sweeping, making boxes, filling the ice container, and completing other duties inside the restaurant as necessary.

82.55.  Plaintiff Plaintiffs and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked for Defendants' Pizza Hut stores.

83.56.  The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

84.57.  Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

85.58.  The delivery drivers at the Defendants' Pizza Hut stores work "dual jobs."

86.59.  Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cars to use while completing deliveries for Defendants.

87.60.  Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

88.61.  Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

89.62.   Pursuant to such requirements, ~~Plaintiff~~ Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

90.63.   The Defendants' Pizza Hut stores reimburse their delivery drivers based on cents per mile driven.

91.64.   Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

92.65.   The Defendants' Pizza Hut stores do not track or record the delivery drivers' actual expenses.

93.66.   The Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

94.67.   The Defendants' Pizza Hut stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

95.68.   The Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

96.69.   The Defendants' Pizza Hut stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

97.70.   The Defendants' Pizza Hut stores did not reasonably approximate the delivery drivers' expenses.

13

98.71.  Plaintiff Plaintiffs and similarly situated delivery drivers typically averaged 3-7 miles per round-trip delivery or more.

99.72. The Defendants' Pizza Hut stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

100.73.        According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.    2017: 53.5 cents/mile
      b.    2018: 54.5 cents/mile
      c.    2019: 58 cents/mile
      d.    2020: 57.5 cents/mile

101.74.        The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

102.75.        As a result of the automobile and other job-related expenses incurred by Plaintiff Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA, and Ohio law, and Kentucky law.

103.76.        Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

104.77.        Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

105.78.        Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed

expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

~~106.~~79.        Defendants have also failed to properly inform ~~Plaintiff~~ Plaintiffs and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

~~107.~~80.        Defendants have willfully failed to pay federal, ~~and~~ Ohio, and Kentucky state minimum wage to ~~Plaintiff~~ Plaintiffs and similarly situated delivery drivers at the Defendants' Pizza Hut stores.

### Plaintiff's Individual Factual Allegations

81.        ~~Plaintiff~~ Plaintiff Mullen has worked at the Pizza Hut store located in Harrison, Ohio since approximately 2016.

~~108.~~82.        Plaintiff Howard has worked at the Pizza Hut store located in Erlanger, Kentucky since July 2019.

~~109.~~83.        ~~Plaintiff~~ Plaintiffs are~~is~~ paid minimum wage minus a tip credit for all hours worked while delivering.

~~110.~~84.        When ~~Plaintiff~~ Plaintiffs are~~is~~ not delivering food, they~~he~~ work~~s~~ inside the restaurant. Their~~His~~ work inside the restaurant includes stocking, doing dishes, cleaning, and completing other duties inside the restaurant as necessary.

~~111.~~85.        ~~Plaintiff~~ Plaintiffs work~~s~~ dual jobs.

~~112.~~86.        Plaintiffs'~~'s~~ inside duties are not related to their~~his~~ delivery duties.

~~113.~~87.        ~~Plaintiff~~ Plaintiffs are~~is~~ paid minimum wage for the hours they~~he~~ work~~s~~ inside the store.

~~114.~~88.        ~~Plaintiff~~ Plaintiffs are~~is~~ required to use their~~his~~ own car~~s~~ to deliver pizzas.

15

89. ~~Plaintiff~~ Plaintiff Mullen w~~as~~as reimbursed between $.25 per mile and ~~now is reimbursed at~~ $.30 per mile.

~~115.~~90. Plaintiff Howard was reimbursed between $.28 per mile and ~~now is reimbursed~~ $.33 per mile ~~due to buying a new car.~~

~~116.~~91. Defendants' reimbursement policy results in ~~Plaintiff~~ Plaintiffs usually receiving between $.25 and $.35 per mile, on average.

~~117.~~92. ~~Plaintiff~~ Plaintiffs are~~is~~ required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

~~118.~~93. ~~Plaintiff~~ Plaintiffs are~~is~~ required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

~~119.~~94. ~~Plaintiff~~ Plaintiffs have~~s~~ purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

~~120.~~95. Defendants does not track the actual expenses incurred by Plaintiff~~s~~.

~~121.~~96. Defendants do not ask ~~Plaintiff~~ Plaintiffs to provide receipts of the expenses they~~he~~ incurs while delivering pizzas for Defendants.

~~122.~~97. Defendants do not reimburse ~~Plaintiff~~ Plaintiffs based on their~~his~~ actual delivery-related expenses.

16

123.98.    Plaintiff Plaintiffs areis not reimbursed at the IRS standard mileage rate for the miles theyhe drives while completing deliveries.

124.99.    Defendants do not reimburse Plaintiff Plaintiffs based on a reasonable approximation of theirhis expenses.

100.    In 2020, for example, the IRS business mileage reimbursement has been $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff Plaintiff Mullen by $.275 per mile ($.575 - $.30). Consider Plaintiff Mullen's's estimate of 3 miles per delivery, Defendants under-reimbursed him $.825 per delivery ($.275 x 3 miles), and $1.24 per hour (1.5 deliveries per hour).

125.101.    In 2020, for example, the IRS business mileage reimbursement has been $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff Howard by $.295 per mile ($.575 - $.28). Consider Plaintiff Howard's estimate of 7 miles per delivery, Defendants under-reimbursed him $.825 per delivery ($.295 x 7 miles), and $2.065 per hour.

126.102.    Defendants failed to properly inform Plaintiff Plaintiffs of the requirements for taking a tip credit.

127.103.    Defendants have failed to properly take a tip credit from Plaintiffs''s wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff Plaintiffs they would be taking.

17

128.104.	Defendants have failed to pay Plaintiff Plaintiffs minimum wage as required by law.

## COLLECTIVE ACTION ALLEGATIONS

129.105.	Plaintiff Plaintiffs brings the First Count on behalf of himself themselves and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

130.106.	At all relevant times, Plaintiff Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.  Plaintiffs''s claims are essentially the same as those of the FLSA Collective.

131.107.	Defendants' unlawful conduct is pursuant to a company policy or practice.

132.108.	Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

133.109.	Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

18

134.110.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed ~~Plaintiff~~ Plaintiffs and other delivery drivers that they would pay.

135.111.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

136.112.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

137.113.    The First Count~~s~~ is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

138.114.    The FLSA Collective members are readily identifiable and ascertainable.

139.115.    In recognition of the services ~~Plaintiff~~ Plaintiffs ha~~s~~ve rendered and will continue to render to the FLSA Collective, ~~Plaintiff~~ Plaintiffs will request payment of ~~a~~ service award~~s~~ upon resolution of this action.

### Oʜɪᴏ Cʟᴀss Aᴄᴛɪᴏɴ Aʟʟᴇɢᴀᴛɪᴏɴs

140.116.    ~~Plaintiff~~ Plaintiff Mullen brings the ~~Second, Third, Fourth, and Fifth~~ Second, Fourth, Sixth, and Seventh Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

141.117.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is

19

assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

142.118.     The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

143.119.     The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

144.120.     All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

145.121.     For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

146.122.     Notice can be provided by means permissible under Rule 23.

147.123.     The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

148.124.     There are more than 50 Rule 23 Class members.

149.125.     Plaintiff Mullen's's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

150.126.     Plaintiff Plaintiff Mullen and the RuleMullen and the Ohio Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, and O.R.C. § 4113.15.

151.127. Plaintiff Plaintiff Mullen and the Rule Mullen and the Ohio Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

152.128. Plaintiff Plaintiff Mullen is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

153.129. Plaintiff Plaintiff Mullen is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

154.130. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

155.131. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

156.132. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff Plaintiff Mullen and the Rule Mullen and the Ohio Rule 23 Class members individually and include, but are not limited to:

    a. Whether Plaintiff Plaintiff Mullen and the Rule Mullen and the Ohio Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

b. Whether ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c. Whether ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Defendants reimbursed ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class members for their actual expenses;

e. Whether Defendants reimbursed ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f. Whether Defendants reimbursed ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

g. Whether Defendants properly reimbursed ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class members;

h. Whether ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class were properly informed of the requirements for taking a tip credit;

i. Whether ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class were actually paid the wage rate they were promised by Defendants;

j. Whether ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class conferred a benefit on Defendants that Defendants were aware of and accepted, and whether it would be unjust for Defendants to retain that benefit without compensating for it;

k. Whether Defendants failed to pay ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~ Mullen and the Ohio Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

l. The nature and extent of class-wide injury and the measure of damages for those injuries.

22

133.   In recognition of the services ~~Plaintiff~~ Plaintiff Mullen has rendered and will continue to render to the Rule 23 Class, ~~Plaintiff~~ Plaintiff Mullen will request payment of a service award upon resolution of this action.

## Kentucky Class Action Allegations

134.   Plaintiff Howard brings the Third, Fifth, and Eighth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Kentucky between the date five years prior to the filing of the Amended complaint and the date of final judgment in this matter ("Rule 23 Class").

135.   Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

136.   The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

137.   The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

138.   All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

139.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

140.    Notice can be provided by means permissible under Rule 23.

141.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

142.    There are more than 50 Rule 23 Class members.

143.    Plaintiff Howard's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

144.    Plaintiff ~~Howard and the Rule~~Howard and the Kentucky RuleHoward and the Kentucky Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Kentucky wage law.

145.    Plaintiff ~~Howard and the Rule~~Howard and the Kentucky RuleHoward and the Kentucky Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

146.    Plaintiff Howard is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

147.    Plaintiff Howard is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

148.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to

24

vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

149. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

150. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff Howard and the RuleHoward and the Kentucky RuleHoward and the Kentucky Rule 23 Class members individually and include, but are not limited to:

m. Whether Plaintiff Howard and the RuleHoward and the Kentucky RuleHoward and the Kentucky Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

n. Whether Plaintiff Howard and the RuleHoward and the Kentucky RuleHoward and the Kentucky Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

o. Whether Plaintiff Howard and the RuleHoward and the Kentucky RuleHoward and the Kentucky Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

p. Whether Defendants reimbursed Plaintiff Howard and the RuleHoward and the Kentucky RuleHoward and the Kentucky Rule 23 Class members for their actual expenses;

q. Whether Defendants reimbursed Plaintiff Howard and the RuleHoward and the Kentucky RuleHoward and the Kentucky Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

25

r.   Whether Defendants reimbursed Plaintiff Howard and the RuleHoward and the Kentucky RuleHoward and the Kentucky Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

s.   Whether Defendants properly reimbursed Plaintiff Howard and the RuleHoward and the Kentucky Rule 23 Class members;

t.   Whether Plaintiff Howard and the RuleHoward and the Kentucky Rule 23 Class were properly informed of the requirements for taking a tip credit;

u.   Whether Plaintiff Howard and the RuleHoward and the Kentucky Rule 23 Class were actually paid the wage rate they were promised by Defendants;

v.   Whether Plaintiff Howard and the RuleHoward and the Kentucky Rule 23 Class conferred a benefit on Defendants that Defendants were aware of and accepted, and whether it would be unjust for Defendants to retain that benefit without compensating for it;

w.   Whether Defendants failed to pay Plaintiff Howard and the RuleHoward and the Kentucky Rule 23 Class their earned wages in a timely manner; and

x.   The nature and extent of class-wide injury and the measure of damages for those injuries.

157.151.      In recognition of the services Plaintiff Howard has rendered and will continue to render to the Rule 23 Class, Plaintiff Howard will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff Plaintiffs and the FLSA Collective)

158.152.      Plaintiff Plaintiffs restates and incorporates the foregoing allegations as if fully rewritten herein.

26

159.153. Plaintiff Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

160.154. Defendants failed to properly claim a tip credit from the wages of Plaintiff Plaintiffs and the FLSA collective because Plaintiff Plaintiffs and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

161.155. Defendants paid Plaintiff Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

162.156. Defendants required and continue to require Plaintiff Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff Plaintiffs and the FLSA Collective for said expenses.

163.157. Defendants required and continue to require Plaintiff Plaintiffs and the FLSA Collective to work in a non-tipped capacity while being paid a tipped wage rate.

164.158. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff Plaintiffs and the FLSA Collective.

165.159. Plaintiff Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

166.160. As a result of Defendants' willful violations, Plaintiff Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff Plaintiff Mullen and the Rule Mullen and the Ohio Rule 23 Class)**

~~167.~~161.        ~~Plaintiff~~ Plaintiff Mullen restates and incorporates the foregoing allegations as if fully rewritten herein.

~~168.~~162.        Defendants paid ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

~~169.~~163.        Defendants paid ~~Plaintiff~~ Plaintiff ~~Mullen~~ and the Rule Mullen and the Ohio Rule 23 Class a tipped wage rate for non-tipped duties unrelated to their tipped duties.

~~170.~~164.        Defendants ostensibly paid ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class at or close to minimum wage for the hours they worked.

~~171.~~165.        Because Defendants required ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class minimum wage.

~~172.~~166.        By not paying ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

167.        As a result of Defendants' violations, ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages - K.R.S. § 337.275**
**(On Behalf of Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class)**

28

168.   Plaintiff Howard restates and incorporates the foregoing allegations as if fully rewritten herein.

169.   By failing to pay Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class minimum wage for all hours worked, Defendants have violated K.R.S. § 337.275.

~~173.~~170.   As a result of Defendants' willful failure to pay Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class minimum wage, Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class are entitled to unpaid minimum wages, liquidated damages in the amount of unpaid minimum wages, reasonable attorneys' fees, and costs. K.R.S. § 337.385

**Count ~~43~~**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class)**

~~174.~~171.   ~~Plaintiff~~Plaintiff Mullen restates and incorporates the foregoing allegations as if fully rewritten herein.

~~175.~~172.   During all relevant times, Defendants were covered by O.R.C. § 4113.15, and ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

~~176.~~173.   O.R.C. § 4113.15(A) requires that Defendants pay ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

29

177.174.	By failing to pay ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

178.175.	~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

179.176.	Plaintiff Mullen's and the Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

180.177.	In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

178.	As a result of Defendants' willful violation, ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 5**
**Failure to Pay Agreed Upon Wages – K.R.S. § 337.060**
**(On Behalf of Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class)**

179.	Plaintiff Howard restates and incorporates the foregoing allegations as if fully rewritten herein.

180.	Kentucky law, K.R.S. § 337.060, requires that Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class be paid all wages agreed upon between the employer and the employee.

181.	By the acts described herein, Defendants have failed to pay all agreed upon wages to Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class.

~~181.~~182.    As a result of Defendants' willful failure to pay Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class agreed upon wages, Plaintiff ~~Howard and the Rule~~Howard and the Kentucky Rule 23 Class are entitled to unpaid wages, liquidated damages in the amount of unpaid wages, 10% of unpaid wages, reasonable attorneys' fees, and costs. K.R.S. § 337.385; K.R.S. 337.990

### Count ~~6~~4
### Damages Pursuant to O.R.C. § 2307.60
**(On Behalf of ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class)**

~~182.~~183.    ~~Plaintiff~~ Plaintiff Mullen restates and incorporates the foregoing allegations as if fully rewritten herein.

~~183.~~184.    A willful violation of the FLSA is a criminal act. 29 U.S.C. § 216(a).

~~184.~~185.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class have been injured as a result.

~~185.~~186.    O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

~~186.~~187.    As a result of Defendants' willful violations of the FLSA, ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

### Count ~~7~~5
### Unjust Enrichment
**(On Behalf of ~~Plaintiff~~ Plaintiff ~~Mullen and the Rule~~Mullen and the Ohio Rule 23 Class)**

~~187.~~188.    The delivery drivers at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars to work for Defendants.

31

188.189.     Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

189.190.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

191.     Plaintiff Plaintiff Mullen and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses.

**Count 8**
**Unjust Enrichment**
**(On Behalf of Plaintiff Howard and the Rule Howard and the Kentucky Rule 23 Class)**

192.     The delivery drivers at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars to work for Defendants.

193.     Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

194.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

190.195.     Plaintiff Howard and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses.

**WHEREFORE,** Plaintiff Plaintiffs Robert Mullen and Steven Howard prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff Plaintiffs and their counsel to represent the collective action members.

32

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of ~~Plaintiff~~ Plaintiff Mullen as representative of the Rule 23 Class and counsel of record as Class Counsel.

~~D.~~E.      Designation of Plaintiff Howard as representative of the Rule 23 Class and counsel or record as Class Counsel.

F.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a, O.R.C. § 4113.15, and the OMFWSA.

~~E.~~G.      A declaratory judgement that the practices complained of herein are unlawful under Kentucky law.

H.      An award of unpaid minimum wages and unreimbursed expenses due under Section 34a, O.R.C. § 4113.15, and the OMFWA.

~~F.~~I.      An award of unpaid minimum wages and unreimbursed expenses due under Kentucky law.

J.      An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

~~G.~~K.      An award of agreed upon wages due under K.R.S. § 337.060 and additional back wages under K.R.S. § 337.385 and K.R.S. 337.990.

L.      An award of restitution for unjust enrichment under Ohio law.

~~H.~~M.      An award of restitution for unjust enrichment under Kentucky law.

N.      Liquidated damages under O.R.C. § 4113.15.

I.O.     Liquidated damages under and interest under Kentucky law.

J.P.     Compensatory and punitive damages under O.R.C. § 2307.60.

K.Q.    An award of prejudgment and post-judgment interest.

L.R.    An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

M.S.    Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Nathan Spencer*
Andrew R. Biller (Ohio Bar # 0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Nathan B. Spencer (Ohio Bar # 0092262)
Philip J. Krzeski (Ohio Bar # 0095713)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*nspencer@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff Plaintiffs and the putative class*

34

## **JURY DEMAND**

~~Plaintiff~~ Plaintiffs hereby demand~~s~~ a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Nathan Spencer
Nathan B. Spencer

35